**SKIBS A/S AWILCO**

v.

**STANDARD FRUIT COMPANY.**

**No. 3555, Division "A".**

United States District Court
E. D. Louisiana,
New Orleans Division.
July 11, 1963.

Haight, Gardner, Poor & Havens, New York City, and Walter Carroll, Jr., New Orleans, La., for libellant.

William S. Stone, New Orleans, La., for respondent.

CHRISTENBERRY, Chief Judge.

This cause, having been tried by the Court at a former date, upon the pleadings and proofs adduced on behalf of the respective parties, and the Court having taken time to consider, now makes the following Findings of Fact and Conclusions of Law:

FINDINGS OF FACT

I.

Libelant (and cross-respondent) is a corporation organized in the Kingdom of Norway and during the months of March and April, 1956, was the owner of the Norwegian flag motor tanker WILSTAR, of 6,406 gross tons.

## II.

Respondent (and cross-libelant) is a corporation organized in the State of Delaware with a principal place of business in the City of New Orleans.

## III.

On or about March 12, 1956, the parties entered into a written charter party whereby respondent became the charterer of the WILSTAR for a voyage with a cargo of diesel fuel oil and bunker "C" fuel oil from one safe U. S. Gulf Port to La Ceiba, Honduras, on certain stipulated terms and conditions.

## IV.

The charter party was on the WARSHIPOILVOY (revised) form with the following notations or special conditions of interest:

a) The vessel's last two cargoes were shown as "Creosote and/or Crude Oil and/or Dirty Petroleum".

b) Total laytime in running hours was agreed at 72 hours; the demurrage rate was stipulated to be $50.00 per hour.

c) Special Provision H3 in Part I of the charter party provided:

"Owners to steam and wash down all tanks. The Owners shall Butterworth the tanks designated for Diesel Oil twice, pick up sediment and ventilate before tendering at loading port. Charterers shall waive odor and color tests and specifications. If not passed by Charles Martin or Saybolt inspector, Owner shall clean to Charles Martin or Saybolt inspectors' approval, but for Charterers' account up to twenty-five hundred dollars ($2500.00), above which cleaning costs shall be divided 50% for Owners' account and 50% for Charterers' account. It is understood Owner to commence cleaning tanks as discharged U. S. ports present voyage. Time in any case to count from arrival loading port."

## V.

The WILSTAR arrived at New Orleans on March 30, 1956, where her creosote cargo was discharged. After discharging, on April 1, 1956, the ship went into a New Orleans shipyard for drydocking and repairs. Cleaning of the vessel's tanks was commenced while in the shipyard.

## VI.

The ship departed New Orleans on April 7, 1956 bound for the loading port designated by the charterers, Baytown, Texas, where she arrived and tendered at 0330 hours on April 19, 1956, by which time the tank cleaning procedures stipulated in Special Provision H3 of Part I of the charter party had been carried out by the ship's crew.

## VII.

Upon arrival at Baytown, the vessel's tanks were inspected on behalf of the respondent by an inspector who approved the tanks designated for the reception of bunker "C" as being in suitable condition, but disapproved the condition of the tanks designated for the reception of diesel oil.

## VIII.

Thereafter, the libelant had the diesel tanks cleaned to the satisfaction of the respondent's inspector at a total cost and expense to the libelant of $9,817.11.

## IX.

The vessel then loaded its cargo, completing at 2030 hours on April 14, 1956 and proceeding without further delay to destination, La Ceiba, where the cargo was discharged complete and in good order.

## X.

In addition to paying the stipulated hire for the vessel, respondent has paid to libelant the sum of $2,773.33 toward the expense of tank cleaning, but has made no further payments against cleaning expenses or against demurrage.

## XI.

The vessel consumed a total of 5 days, 10 hours, and 30 minutes after arrival in the loading port (due allowance being made for the time consumed in pumping ballast) and before her cargo was loaded. Similarly, 1 day, 16 hours, and 15 minutes was used in discharging at La Ceiba, making a total time consumed at the loading and discharging ports (including time spent in tank cleaning at the loading port) of 7 days, 2 hours, and 45 minutes. The three day lay period stipulated in the charter party was exceeded by 4 days, 2 hours, and 45 minutes.

## CONCLUSIONS OF LAW

### I.

This Court, sitting in admiralty, has jurisdiction of this cause, 28 U.S.C. § 1333.

### II.

By the terms of the charter party, respondent was obliged to bear the first $2,500 of any necessary tank cleaning expenses incurred after the completion of the initial stipulated cleaning procedures performed by the crew. The respondent was further obligated to share equally with libelant any further necessary tank cleaning expense in excess of $2,500. By this formula established in the charter party, respondent's share of tank cleaning expenses amounted to $6,158.56, of which amount it has paid $2,773.33, leaving a balance due by respondent to libelant on account of tank cleaning of $3,385.23.

### III.

By the terms of the charter party, respondent was obliged to pay to libelant demurrage at the stipulated rate of $50 per hour for the period of 4 days, 2 hours, and 45 minutes, a total of $4,937.-50.

### IV.

Libelant is entitled to recover from respondent on account of tank cleaning expenses and demurrage the sum of $8,-322.73, with interest and costs.

### V.

Respondent (as cross-libelant) is not entitled to the return of its partial payment against tank cleaning expenses in the amount of $2,773.33, or to the return of any part of that sum, and the cross-libel should be dismissed.